NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERALD B. JOHNSON, : | **Hon. Dennis M. Cavanaugh** |
| : | |
| Plaintiff, : | **OPINION** |
| : | |
| v. : | Civil Action No. 06-CV-2168 (DMC) |
| : | |
| BERGEN COMMUNITY COLLEGE, : | |
| : | |
| Defendant. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendant Bergen Community College's ("Defendant") motion for summary judgment pursuant to Fed. R. Civ. P. 56. *Pro se* Plaintiff Gerald B. Johnson ("Plaintiff") cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **granted** and Plaintiff's cross-motion for summary judgment is **denied**.

**I.   BACKGROUND**[1]

Plaintiff brings this action for discriminatory retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff is an African American. Defendant employed

---

[1] The facts set-forth in this Opinion are taken from the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

Plaintiff as a lecturer in its English Department from January 15, 1998 through September 1999, and then as a non-tenured professor of English from September 1999 through June 30, 2004. Because of numerous student complaints and poor classroom evaluations, by letter dated February 2, 2004 the President of Bergen Community College, Judith K. Winn ("President Winn"), informed Plaintiff that the College would not renew his contract terminating June 30, 2004.

In the Complaint, Plaintiff alleges he was discriminated against because of his race. Plaintiff, however, in his moving papers for summary judgment, emphasizes that this action is not premised on discrimination, but rather, that he was wrongfully terminated in retaliation for complaining about and exposing racial biases at the College. Plaintiff alleges that he engaged in protected activity by voicing his concerns about the discriminatory conduct of certain individuals at the College. Plaintiff further contends that Defendant failed to comply with several discovery requests, thereby preventing him from substantiating several of his claims.

Prior to filing this suit, Plaintiff exhausted all of his administrative remedies, and the United States Equal Employment Opportunity Commission issued a right to sue letter on February 14, 2006. Defendant moved for summary judgment on or about February 29, 2008. Plaintiff cross-moved for summary judgment on or about May 15, 2008.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P.

2

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences – including issues of credibility – in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**III.    DISCUSSION**

Despite the allegations in the Complaint, Plaintiff emphasizes in his moving papers for summary judgment that he is not pursuing a lawsuit for racial discrimination.  That being the case, the Court will address Plaintiff's claims as they relate to discriminatory retaliation only.

The Supreme Court of the United States has set forth a three-stage burden-shifting framework for discriminatory retaliation cases.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 (3d Cir. 1996) (noting

3

that the McDonnell Douglas burden-shifting scheme for discrimination claims also applies to discriminatory retaliation claims). "The complainant in a Title VII [action] must carry the initial burden under the statute of establishing a [*prima facie*] case" of retaliation. McDonnell Douglas, 411 U.S. at 802. To meet this initial burden, the plaintiff must show that "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001) (citations omitted). Second, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the employer articulates a legitimate, nondiscriminatory reason for the action, the burden shifts finally to the plaintiff to demonstrate that the stated reason was in fact pretext. Id. at 804.

For the reasons set forth below, this Court finds that Plaintiff is unable to establish a *prima facie* case for retaliation. Further, Defendant can articulate a nonpretextual, nondiscriminatory reason for the adverse employment action. Thus, summary judgment in favor of Defendant is appropriate.

### A.   **Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation**

Defendant is entitled to summary judgment as a matter of law because Plaintiff cannot establish a *prima facie* case of retaliation. As to the first prong, Plaintiff was not engaged in a protected activity. Plaintiff contends that he engaged in protected activity by complaining, in writing, that College officials engaged in discriminatory conduct. During his deposition, Plaintiff admits that he did not make any formal, written complaints about the alleged conduct through the

appropriate mediums, that is, either to the College compliance officer or to Divisional Dean Andrew Tomko ("Dean Tomko"). Additionally, Plaintiff admits that he will not call any witnesses to testify about his complaints. The only record of the alleged protected activity comes through the documents uncovered during discovery. Plaintiff contends that his complaints came in three forms: (1) through an email questioning how faculty schedules were awarded; (2) through a Classroom Instructional Evaluation Response dated November 5, 2001 ("2001 Response"); and (3) through a Classroom Instructional Evaluation Rebuttal dated April 19, 2002 ("2002 Rebuttal"). None of these complaints substantiate the claim that Plaintiff engaged in protected activity.

Discovery revealed only one email from Plaintiff, dated November 8, 2003, which pertained to faculty schedules. The communication is completely devoid of any allegations of racial discrimination, and, thus, it cannot be considered protected activity. Notwithstanding that Plaintiff did not engage in protected activity by sending this email, Defendants have submitted evidence setting forth legitimate reasons for the scheduling choices. The College informed Plaintiff that his schedule requests could not be accommodated because preference was given to professors with more seniority; classrooms were unavailable at the requested times; requests conflicted with meeting times; class times had already been set in the College registration booklet before Plaintiff made his requests; and it was too burdensome on Plaintiff to allow him to teach five classes in a row on Mondays as Plaintiff requested. Similarly, the 2001 Response is devoid of any allegations of racial discrimination, and, thus, it cannot be considered protected activity.

Plaintiff stresses the importance of the 2002 Rebuttal in demonstrating his engagement in protected activity. In the 2002 Rebuttal, Plaintiff complains that the Head of the English Department, Dr. Davis, privileged the grievances of mostly white, female students at his expense. The students complained directly to Dr. Davis about the grades they received in Plaintiff's class, and Dr. Davis did not consult with Plaintiff about the matter. Plaintiff contends that "[b]ecause [Dr. Davis] did not consult me, she discriminated against me." This allegation is mere conjecture and does not demonstrate a form of protected activity. The 2002 Rebuttal does not indicate how this failure to consult with Plaintiff is discriminatory. The College's "Course Grade Appeal Policy" does not require Dr. Davis, to whom grade complaints are submitted, to consult with the faculty member about grade disputes. The choice not to consult is a professional disagreement between the parties, not evidence of discrimination for failure to follow protocol. This baseless complaint of discrimination cannot be considered protected activity. Plaintiff cannot point to any part of the record to substantiate that he engaged in protected activity, and, thus, summary judgment in favor of Defendant is appropriate.

Although Plaintiff has not met the first prong, the Court will consider the rest of the test under Weston. As to the second prong, Defendant admits that terminating Plaintiff was an adverse employment action. It is beyond dispute, however, that Plaintiff cannot meet the third prong, as no causal connection exists between the protected activity and the adverse employment action. Even assuming, *arguendo*, that Plaintiff engaged in protected activity by submitting the 2002 Rebuttal, thereafter, Plaintiff was twice re-appointed to his tenure-track position. These re-appointments sever any causal connection between the alleged protected activity and the ultimate decision to terminate Plaintiff's employment in early 2004. Plaintiff also fails to submit any

evidence connecting his alleged protected activity with the three individuals who determined that he was not fit to teach at the College.

### B. Defendant has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action

Notwithstanding that Plaintiff cannot meet his first burden, the College's decision to not renew Plaintiff's contract was supported by legitimate, nondiscriminatory reasons.  The decision to terminate Plaintiff's employment was made by three individuals: Dean Tomko, Academic Vice President David Levinson ("Vice President Levinson"), and President Winn.  Plaintiff never complained to these individuals about discrimination at the College.

Dean Tomko, who actually recommended reappointment, could not glowingly endorse Plaintiff.  Dean Tomko commented that he was "by no means convinced that [Plaintiff] can successfully address his issues in the classroom," noting especially that students "reported [that Plaintiff] remains defensive and confrontational."  Levinson, noting the "the scope of [Plaintiff's] deficiencies" and that "a number of [teaching areas] areas that need improvement," "[did not] believe that Dr. Johnson's performance meets the [C]ollege's standard for teaching excellence that is expected of a faculty member applying for fifth reappointment with tenure."  Levinson's recommendation was affirmed by President Winn, and Plaintiff was notified appropriately of the decision.  Further, numerous student complaints and poor classroom evaluations were revealed through discovery.  This voluminous documentation demonstrates that the termination was not a pretext for discrimination.

Plaintiff does not provide any facts, documents, testimony or affidavits to support that the decision to terminate his employment was a pretext for discriminatory retaliation carried out by

7

these individuals.  Thus, Plaintiff cannot meet his final burden under McDonnell Douglas.  There is no genuine issue of material fact that Plaintiff cannot prevail on his retaliation claims, and, thus, summary judgment in favor of Defendant is appropriate.

     **C.**     **Discovery was Proper**

Plaintiff contends that Defendant failed to comply with several discovery requests and has thereby prevented him from substantiating several of his claims.  Defendant provided Plaintiff with thousands of pages of requested documents and has answered his interrogatories.  At a case management conference held by Magistrate Judge Falk on February 2, 2008, Plaintiff's additional requests for documents was denied and Judge Falk ruled that the College has complied satisfactorily with all production requests.  There is noting unusual about the discovery process that would cause this Court to question the February 2, 2008 ruling, and thus, this Court defers to Magistrate Judge Falk's judgment on the matter.

**IV.**     **CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment is **granted** and Plaintiff's cross-motion for summary judgment is **denied**.  An appropriate Order accompanies this Opinion.

                                                        S/ Dennis M. Cavanaugh
                                                        Dennis M. Cavanaugh, U.S.D.J.

Date:        July  8 , 2008
Orig.:       Clerk
cc:          All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File